David Bartels (SBN 209449)
dbartels@lawrencebartels.com
LAWRENCE BARTELS LLP
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618-3047
(949) 346-4646

Chad Flores (*pro hac vice forthcoming*)
chad@chadflores.law
FLORES LAW PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Attorneys for Plaintiffs Thomas Lopez,
Firearms Policy Coalition, Inc. and California Gun Rights Foundation

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS LOPEZ, an individual; FIREARMS POLICY COALITION, INC., a Delaware nonprofit corporation; and CALIFORNIA GUN RIGHTS FOUNDATION, a California nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a California municipal corporation; JAMES McDONNELL, in his official capacity as Chief of Police of the City of Los Angeles; HYDEE FELDSTEIN SOTO, in her official capacity as City Attorney for the City of Los Angeles; CITY OF INGLEWOOD, a California municipal corporation; MARK FRONTEROTTA, in his official capacity as Chief of Police of the City of Inglewood; | No. _____ <br><br> **CIVIL RIGHTS COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983: FIRST, SECOND AND FOURTEENTH AMENDMENTS, SUPREMACY CLAUSE** |

1

RICK R. OLIVAREZ, in his official capacity as City Attorney for the City of Inglewood.

Defendants.

**Table of Contents**

I.      Introduction....................................................................................................4
II.     Jurisdiction & Venue .....................................................................................7
III.    Parties............................................................................................................7
        A.      Individual Plaintiff............................................................................7
        B.      Organizational Plaintiffs...................................................................7
        C.      L.A. City Defendants........................................................................9
        D.      Inglewood Defendants ....................................................................10
IV.     1-in-30 Bans Violate the Constitution. ........................................................12
        A.      L.A. City's 1-in-30 Ban. .................................................................12
        B.      Inglewood's 1-in-30 Ban. ...............................................................14
        C.      Defendants' 1-in-30 Bans violate the Right to Keep and Bear Arms.16
        D.      The 1-in-30 Bans irreparably harm Plaintiff Lopez...........................19
        E.      The 1-in-30 Bans irreparably harm the Organizational Plaintiffs. .....21
V.      The Section 1021.11 Fee-Shifting Regime Violates the Constitution. .........25
VI.     Causes of Action ..........................................................................................28
        A.      Count One........................................................................................28
        B.      Count Two .......................................................................................30
        C.      Count Three .....................................................................................31
        D.      Count Four .......................................................................................33
        E.      Count Five........................................................................................34
VII.    Prayer for Relief...........................................................................................35

Plaintiffs Thomas Lopez, Firearms Policy Coalition, Inc., and California Gun Rights Foundation file this complaint.

## I.    Introduction

1.    The City of Los Angeles and the City of Inglewood each enforce a local ordinance that prohibits any person from purchasing more than one handgun within a thirty-day period. These "1-in-30 Bans" categorically bar ordinary, law-abiding citizens from acquiring more than one handgun per month—regardless of the citizen's background, qualifications, or purpose—and back that prohibition with criminal penalties. No exemption or pathway exists for the law-abiding citizen who wishes to purchase two handguns in the same month for self-defense or any other lawful purpose.

2.    The Ninth Circuit has already held that this exact restriction violates the Second Amendment. In *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025), the Circuit struck down California's statewide 1-in-30 Ban as facially unconstitutional, holding that the Second Amendment protects the right to possess multiple firearms and to acquire them without meaningful constraint, and that no historical tradition of firearms regulation supports a categorical ban on the frequency of purchases by law-abiding citizens. The local ordinances challenged here impose the same prohibition on the same conduct for the same reasons. They fail under the same analysis.

3.     The Defendant jurisdictions enacted their 1-in-30 Bans years before the State adopted its own version of the restriction. The Ninth Circuit's invalidation of the state law did not automatically repeal these local ordinances. These Bans remain on the books and enforceable. Defendants have given no indication they intend to stop enforcing them. Plaintiffs—one who wishes to purchase multiple handguns and membership organizations whose members share that same desire—bring this action to ensure that the Constitution's command reaches these local enactments as well.

4.     Plaintiffs therefore bring this challenge because they unquestionably face "a realistic danger of sustaining a direct injury as a result of the law's operation or enforcement," *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020), seek to vindicate their rights, and to enjoin enforcement of the Cities' Bans as required to conform the law to the Constitution's text, our Nation's history, and the Supreme Court's binding precedents.

5.     Plaintiffs also bring this suit to challenge the constitutionality of California Code of Civil Procedure Section 1021.11's one-sided fee-shifting provisions and seek an injunction against its application or enforcement. Before pressing their challenges to the Cities' Bans, Plaintiffs must first remove the cloud hanging over those claims by virtue of the operation of Section 1021.11.

6.     Section 1021.11 is an unconstitutional attempt by the State of California to deter citizens and firearms advocacy groups—through a novel, one-

5

way fee-shifting penalty—from accessing the courts to litigate claims over firearms regulations. The decision in *Miller v. Bonta*, 646 F. Supp. 3d 1218 (S.D. Cal. Dec. 19, 2022), enjoined the State from enforcing Section 1021.11 by holding that Section 1021.11 violated the First Amendment, *id.* at 1224–27, and the Supremacy Clause, *id.* at 1227–31, and noting that it likewise ran afoul of the Due Process and Equal Protection Clauses, *id.* at 1225–26. "A state law that threatens its citizens for questioning the legitimacy of its firearm regulations may be familiar to autocratic and tyrannical governments, but not American government. American law counsels vigilance and suspiciousness of laws that thwart judicial scrutiny." *Id.* at 1226. Because "the purpose and effect of § 1021.11 is to trench on a citizen's right of access to the courts and to discourage the peaceful vindication of an enumerated constitutional right," the Court declared the statute invalid. *Id.* at 1227.

7.   Because the Defendant local jurisdictions were not defendants in *Miller*, they are not directly bound by the injunction. But Section 1021.11 is unconstitutional regardless of whether the State or these local-government Defendants seek to enforce it, so Plaintiffs now seek declaratory and injunctive relief to enjoin its application by the Defendants here.

## II.    Jurisdiction & Venue

8.    The Court's original subject-matter jurisdiction comes from 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.    This action, based on Defendants' violation of Plaintiffs' constitutional rights, is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

## III.    Parties

### A.    Individual Plaintiff

11.    Plaintiff Thomas Lopez is a natural person and a citizen of the United States. Lopez is twenty-six years old. He resides in La Verne, California, in Los Angeles County.

### B.    Organizational Plaintiffs

12.    Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, with members across the country. FPC works to create a world of maximal human liberty and freedom and to promote and protect

individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, including the named Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. The risk of fee liability imposed by Section 1021.11 has caused FPC to refrain from filing suits or litigating constitutional claims against Defendants that it is otherwise prepared to file and litigate, including litigation against Defendants as set forth below.

13.     Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with a place of business in Clark County, Nevada. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has members throughout California. CGF brings this action on behalf of its members, including the named Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. The risk of fee liability imposed by

Section 1021.11 has caused CGF to refrain from filing suits or litigating constitutional claims against Defendants that it is otherwise prepared to file and litigate, including litigation against Defendants as set forth below.

14.   FPC and CGF are referred to collectively as the "Organizational Plaintiffs."

**C.   L.A. City Defendants**

15.   Defendant City of Los Angeles is a municipal corporation and a chartered city, organized and existing under the laws of the State of California. Under its City Charter, the City of Los Angeles "shall have all powers possible for a charter City to have under the constitution and laws of this state as fully and completely as though they were specifically enumerated in the Charter." City of Los Angeles, City Charter, art. I, § 101 (2025).

16.   Defendant James McDonnell is the Chief of Police of the City of Los Angeles and the chief administrative officer of the Los Angeles Police Department. The Police Department has "the power and duty to enforce the penal provisions of the Charter, City ordinances and state and federal law." City of Los Angeles, City Charter, art. V, § 570 (2025). Subject to the Charter and the instruction of the Board of Police Commissioners, the Chief of Police has the power and duty to, among other things, "suppress all riots, disturbances and breaches of the peace" and to administer the affairs of the Department. *Id.* § 574.

17.    The City of Los Angeles's one-in-thirty ordinance, LAMC § 55.14, assigns specific enforcement functions to the Board of Police Commissioners and, through it, to the Chief of Police—including prescribing forms for purchaser declarations, directing dealer signage, and inspecting dealer records. *See* LAMC § 55.14(f)–(h).

18.    Defendant Hydee Feldstein Soto is the City Attorney of the City of Los Angeles. The City Attorney has the power and duty to "prosecute on behalf of the people all criminal cases and related proceedings arising from violation of the provisions of the Charter and City ordinances, and all misdemeanor offenses arising from violation of the laws of the state occurring in the City." City of Los Angeles, City Charter, art. IV, § 271(c) (2025). Violations of Section 55.14 are punishable as infractions or misdemeanors. LAMC § 55.14(j).

19.    Defendants McDonnell and Feldstein Soto are each sued in their official capacities.

20.    The City of Los Angeles, Jim McDonnell, and Hydee Feldstein Soto are referred to collectively as the "L.A. City Defendants."

**D.    Inglewood Defendants**

21.    Defendant City of Inglewood is a municipal corporation and a chartered city, organized and existing under the laws of the State of California. The City of

10

Inglewood exercises all powers granted to charter cities under the California Constitution and state law.

22.   Defendant Mark Fronterotta is the Chief of Police of the City of Inglewood and the chief law enforcement official in and for the City. Fronterotta has served as Chief of Police since January 2013. He is responsible for the enforcement of the Inglewood Municipal Code, including its firearms provisions. The City's one-in-thirty ordinance, Inglewood Municipal Code Section 5-19.6, assigns specific enforcement functions directly to the Chief of Police—including prescribing purchaser-declaration forms and directing dealer signage. *See* Inglewood Mun. Code § 5-19.6(g)–(h).

23.   Defendant Rick R. Olivarez is the City Attorney of the City of Inglewood. The Inglewood City Attorney's Office is responsible for "[p]rosecuting all alleged commission of state and local misdemeanors occurring within the City." City of Inglewood, City Attorney's Office, https://perma.cc/6VVL-2VS2. Violations of Inglewood Municipal Code Section 5-19.6 are punishable as infractions or misdemeanors. Inglewood Mun. Code § 5-19.6(j).

24.   Defendants Fronterotta and Olivarez are each sued in their official capacities.

25.   The City of Inglewood, Mark Fronterotta, and Rick Olivarez are referred to collectively as the "Inglewood Defendants."

11

## IV.   1-in-30 Bans Violate the Constitution.

### A.   L.A. City's 1-in-30 Ban.

26.   "L.A. City's 1-in-30 Ban" comprises the following laws as enacted and enforced by the City of Los Angeles and its individual Defendant officials.

27.   The City of Los Angeles prohibits any person from purchasing more than one handgun within a thirty-day period. Los Angeles Municipal Code § 55.14, enacted by Ordinance No. 172,430 (eff. Mar. 4, 1999, oper. June 3, 1999).

28.   Section 55.14 defines "dealer" as a retail firearms dealer licensed by the City of Los Angeles. LAMC § 55.14(a).

29.   Section 55.14(b) provides the primary prohibition: "No person shall make application to a dealer, as provided in Section 12072 of the California Penal Code, to purchase a pistol, revolver or other firearm capable of being concealed upon the person, herein referred to as 'handgun,' within thirty (30) days of making a prior application for the purchase of a handgun within the State of California." LAMC § 55.14(b). The thirty-day period runs from the date of the prior application, counting that date as day one. *Id*.

30.   Section 55.14 also restricts dealers. No dealer may transfer a handgun to any person the dealer knows has applied to purchase more than one handgun within the preceding thirty days. LAMC § 55.14(c). No dealer may transfer a handgun if the dealer has received notice from the California Department of Justice

that the purchaser has submitted another handgun application within the preceding thirty days. LAMC § 55.14(d).

31.    The ordinance requires each dealer to maintain records of every handgun sale—including the purchaser's name, the type of handgun, and the date of sale—for at least two years, subject to inspection during normal business hours. LAMC § 55.14(f). Each dealer must post a conspicuous sign stating the obligations and restrictions imposed by the ordinance. LAMC § 55.14(g). Each purchaser must sign a form, under penalty of perjury, declaring whether the purchaser has applied to purchase a handgun within the preceding thirty days. LAMC § 55.14(h).

32.    The ordinance lists seventeen categories of exempted persons and transactions. LAMC § 55.14(i). These exemptions cover, among others, licensed firearms dealers, law enforcement agencies, peace officers, correctional facilities, licensed collectors, persons replacing a single lost or stolen handgun, and certain other narrow categories. The exemptions do not cover ordinary, law-abiding citizens who wish to purchase more than one handgun in a thirty-day period for self-defense or other lawful purposes, including Plaintiffs.

33.    The ordinance imposes escalating penalties. A first violation of the purchaser prohibition is an infraction subject to a $50 fine. A second violation is an infraction subject to a $100 fine. A third or subsequent violation is a misdemeanor. Each handgun applied for constitutes a separate violation. LAMC § 55.14(j).

**B.    Inglewood's 1-in-30 Ban.**

34.    "Inglewood's 1-in-30 Ban" comprises the following laws as enacted and enforced by the City of Inglewood and its individual Defendant officials.

35.    The City of Inglewood prohibits any person from purchasing more than one handgun within a thirty-day period. Inglewood Municipal Code § 5-19.6 ("Sale or Purchase of More Than One Handgun Within a Thirty-Day Period Prohibited.").

36.    Section 5-19.6 defines "dealer" as a retail firearms dealer licensed by the City of Inglewood. Inglewood Mun. Code § 5-19.6(a).

37.    Section 5-19.6(b) provides the primary prohibition: "No person shall make application to a dealer, as provided in Section 12072 of the California Penal Code, to purchase a pistol, revolver or other firearm capable of being concealed upon the person, herein referred to as 'handgun,' within thirty days of making a prior application for the purchase of a handgun within the state of California." Inglewood Mun. Code § 5-19.6(b). The thirty-day period runs from the date of the prior application, counting that date as day one. *Id*.

38.    Section 5-19.6 also restricts dealers. No dealer may "transfer the title of any handgun to any person whom the dealer knows has made application to purchase more than one handgun within the state of California within a thirty-day period prior thereto." Inglewood Mun. Code § 5-19.6(c). No dealer may transfer a handgun if the dealer has received notice from the California Department of Justice

14

that the purchaser has submitted another handgun application within the preceding thirty days. Inglewood Mun. Code § 5-19.6(d).

39.    The ordinance requires each dealer to maintain records of every handgun sale for at least two years, subject to inspection during normal business hours. Inglewood Mun. Code § 5-19.6(f). Each dealer must post a conspicuous sign, pursuant to direction by the Chief of Police, stating the obligations and restrictions imposed by the ordinance. Inglewood Mun. Code § 5-19.6(g). Each purchaser must sign a form prescribed by the Chief of Police, under penalty of perjury, declaring whether the purchaser has applied to purchase a handgun within the preceding thirty days. Inglewood Mun. Code § 5-19.6(h).

40.    The ordinance lists seventeen categories of exempted persons and transactions. Inglewood Mun. Code § 5-19.6(i). These exemptions cover, among others, licensed firearms dealers, law enforcement agencies, peace officers, correctional facilities, licensed collectors, persons replacing a single lost or stolen handgun, and certain other narrow categories. The exemptions do not cover ordinary, law-abiding citizens who wish to purchase more than one handgun in a thirty-day period for self-defense or other lawful purposes, including Plaintiffs.

41.    The ordinance imposes escalating penalties. Violations of the purchaser prohibition are punishable as infractions or misdemeanors under the penalty

15

structure set forth in Inglewood Municipal Code § 5-19.6(j). Each handgun applied for constitutes a separate violation.

42.    The Los Angeles and Inglewood City ordinances are referred to collectively as the "1-in-30 Bans" or the "Bans."

**C.      Defendants' 1-in-30 Bans violate the Right to Keep and Bear Arms.**

43.    *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025), controls. *Nguyen* held California Penal Code Section 27535(a)—the State's one-gun-a-month law— facially unconstitutional under the Second Amendment. The local 1-in-30 Bans challenged here impose the same restriction on the same conduct. They fail for the same reasons.

44.    The Second Amendment, incorporated against state and local governments via the Fourteenth Amendment, protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II; *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010); *id.* at 805–858 (Thomas, J., concurring in part and concurring in judgment) ("the right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause"). Under *Bruen*, the Court asks whether the Second Amendment's plain text covers the regulated conduct and, if so, whether the government can show the law is consistent with this Nation's historical tradition of

firearm regulation. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022); *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

45.     The regulated conduct here is the acquisition of more than one handgun within thirty days. *Nguyen*, 140 F.4th at 1241. The Second Amendment's plain text covers that conduct because the right to keep and bear "Arms," plural, protects possession of multiple firearms, and the right to possess arms necessarily includes the right to acquire them. *Id.* at 1242–43; *District of Columbia v. Heller*, 554 U.S. 570, 581, 635 (2008); *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118 (9th Cir. 2024); *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc). The Amendment forbids infringement, and that term reaches burdens that hinder the right, not just total bans. *See, e.g.*, *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1046 n.8 (4th Cir. 2023).

46.     The 1-in-30 Bans meaningfully abridge Plaintiffs' rights. A categorical bar on purchasing more than one handgun in thirty days is not an incidental delay tied to a valid regulatory function. California already imposes background checks, a ten-day waiting period, a firearm safety certificate requirement, and a safe-handling demonstration, while federal law separately prohibits straw purchases and requires reporting of multiple handgun sales. The Bans add only a flat temporal cap on lawful purchases by ordinary citizens. *Nguyen*, 140 F.4th at 1243. Nor are they analogous to licensing regimes, because they provide no pathway by which an ordinary, law-

abiding citizen may purchase more than one handgun within the thirty-day period. *Id.* at 1248. As *Nguyen* observed, no other constitutionally protected right is subject to this kind of temporal rationing. *Id*. at 1243. The Bans therefore burden conduct protected by the Second Amendment's plain text and are presumptively unconstitutional. *See id.*; *Bruen*, 597 U.S. at 24.

47. Defendants cannot rebut that presumption. Under *Bruen*, they bear the burden to show that the Bans are consistent with the Nation's historical tradition of firearm regulation by identifying relevantly similar historical analogues. *Bruen*, 597 U.S. at 24, 29; *Rahimi*, 602 U.S. at 692. No such tradition exists.

48. During the Founding Era, Americans commonly owned, carried, bought, and sold multiple firearms, and no colony or state restricted the frequency or quantity of firearm purchases by law-abiding citizens. *Nguyen*, 140 F.4th at 1249. In *Nguyen*, the Ninth Circuit rejected every analogue California offered to defend the identical state restriction, including laws restricting sales to Native Americans, dealer-registration and sales-tracking requirements, licensing regimes, and a Virginia law limiting the carrying of multiple firearms near Native towns. *Id.* at 1248–49. Those laws targeted dangerous persons, particular places, or different conduct; none resembled a categorical ban on how often ordinary citizens may acquire handguns. *Id.* The same failed historical record cannot sustain these local

analogues, which apply to nearly all persons, all handguns, and offer no pathway for lawful compliance.

The 1-in-30 Bans are therefore facially unconstitutional under the Second and Fourteenth Amendments. Plaintiff Lopez is a law-abiding citizen not disqualified from acquiring, possessing, or owning firearms. He has no criminal history or disqualifying mental-health history and may lawfully purchase firearms in California.

**D.     The 1-in-30 Bans irreparably harm Plaintiff Lopez.**

49.     Plaintiff Lopez is not disqualified from exercising his Second Amendment right to acquire, possess, and own firearms and ammunition. He has no criminal history. He has no history of mental health adjudication or commitment. He could pass a government background check and lawfully purchase a firearm in the State of California.

50.     Plaintiff Lopez serves in the California National Guard. Before joining the Guard, he served five years on active duty in the United States Army as an infantryman. He holds an active secret security clearance issued by the United States government. He holds a concealed carry permit issued by the State of North Carolina, valid through 2028. He is a current firearm owner.

51.     Plaintiff Lopez is a member of Plaintiffs FPC and CGF.

19

52.     Plaintiff Lopez desires and intends to purchase more than one handgun within a thirty-day period from a federally licensed firearms dealer located in the City of Los Angeles and the City of Inglewood. He is ready, willing, and financially able to make those purchases now. Among the handguns Plaintiff Lopez desires to purchase are models manufactured by Canik and Walther—handguns in common use for lawful purposes throughout California and the United States and eligible for purchase in California.

53.     Plaintiff Lopez intends to acquire these handguns for self-defense, defense of others, proficiency training, and other lawful purposes in the exercise of his rights secured under the Second and Fourteenth Amendments.

54.     But for the 1-in-30 Bans and Defendants' enforcement of them, Plaintiff Lopez would purchase more than one handgun within a thirty-day period from a federally licensed dealer in the City of Los Angeles and the City of Inglewood.

55.     The 1-in-30 Bans prohibit Plaintiff Lopez from doing so. If Plaintiff Lopez were to apply to purchase more than one handgun within a thirty-day period from a dealer in the City of Los Angeles, he would face criminal prosecution under LAMC § 55.14(j). If he were to do so from a dealer in the City of Inglewood, he would face prosecution under Inglewood Municipal Code § 5-19.6(j). Each handgun applied for would constitute a separate violation. Repeat violations escalate from infractions to misdemeanors.

56.    No exemption in either of the Bans applies to Plaintiff Lopez. He is not a licensed firearms dealer, a law enforcement officer, a correctional facility, a licensed collector, or any other category of exempt person or entity. He is an ordinary, law-abiding citizen who wishes to exercise his constitutionally protected right to purchase handguns for lawful purposes. The Bans categorically prohibit him from purchasing more than one handgun within a thirty-day period and offer no pathway—no application, no permit, no qualification process—by which he may do so.

57.    Plaintiff Lopez faces a credible threat of prosecution. The 1-in-30 Bans are actively enforced by the Defendant officials in each jurisdiction. Defendants have given no indication that they will refrain from enforcing the 1-in-30 Bans. Plaintiff Lopez's intended conduct—applying to purchase more than one handgun within a thirty-day period—is the conduct each ordinance prohibits and penalizes.

58.    The 1-in-30 Bans thus force Lopez to choose between refraining from exercising his Second Amendment right to purchase the handguns he desires within the timeframe he desires, or facing criminal sanction. Lopez refrains. His injury is directly traceable to the 1-in-30 Bans and would be redressed by the declaratory and injunctive relief sought in this action.

**E.    The 1-in-30 Bans irreparably harm the Organizational Plaintiffs.**

59.    The foregoing paragraphs are incorporated herein as if set forth in full.

21

60. The Organizational Plaintiffs operate in California with missions that include defending and promoting the rights of the People under the Second Amendment, advancing individual liberty, and restoring freedom through litigation, legislative advocacy, grassroots advocacy, research, education, and outreach.

61. The Organizational Plaintiffs have members who reside in California and purchase firearms in the City of Los Angeles and the City of Inglewood, including the named Individual Plaintiff. The Organizational Plaintiffs sue on behalf of the named Individual Plaintiff and their members.

62. The Organizational Plaintiffs' members in the City of Los Angeles and the City of Inglewood include individuals who, such as Plaintiff Lopez, are law-abiding adults who are not disqualified from exercising their Second Amendment protected rights. They could pass a government background check and lawfully purchase firearms in the State of California. They are current firearm owners or desire to become firearm owners. They are members of "the people" protected by the Second Amendment.

63. The Organizational Plaintiffs' members in each of these jurisdictions desire and intend to purchase more than one handgun within a thirty-day period from federally licensed firearms dealers located in the City of Los Angeles and/or the City of Inglewood for self-defense, defense of others, proficiency training, and other

lawful purposes in the exercise of their rights secured under the Second and Fourteenth Amendments.

64. But for the 1-in-30 Bans and Defendants' enforcement of them, the Organizational Plaintiffs' members would purchase more than one handgun within a thirty-day period from federally licensed dealers in these jurisdictions.

65. The 1-in-30 Bans prohibit the Organizational Plaintiffs' members from doing so. If a member of the Organizational Plaintiffs were to apply to purchase more than one handgun within a thirty-day period from a dealer in the City of Los Angeles, that member would face criminal prosecution under LAMC § 55.14(j). If a member of the Organizational Plaintiffs were to do so from a dealer in the City of Inglewood, that member would face prosecution under Inglewood Municipal Code § 5-19.6(j).

66. No exemption in any of the three ordinances applies to the Organizational Plaintiffs' affected members. They are ordinary, law-abiding citizens who wish to exercise their constitutional right to purchase handguns for lawful purposes. The Bans categorically prohibit them from purchasing more than one handgun within a thirty-day period and offer no pathway by which they may do so.

67. The Organizational Plaintiffs' members face a credible threat of prosecution. The 1-in-30 Bans are actively enforced by the Defendant officials in each jurisdiction. Defendants have given no indication that they will refrain from

enforcing the Bans. The intended conduct of the Organizational Plaintiffs' members — applying to purchase more than one handgun within a thirty-day period — is the precise conduct each ordinance prohibits and penalizes.

68. The injuries to the Organizational Plaintiffs' members are of the kind that the Organizational Plaintiffs were organized to redress. The Organizational Plaintiffs exist to defend the Second Amendment protected rights of their members, and the deprivation of those rights by the 1-in-30 Bans falls squarely within the Organizational Plaintiffs' organizational mission and purpose.

69. Neither the claims asserted nor the relief requested in this action requires the participation of the Organizational Plaintiffs' individual members. The constitutional validity of the 1-in-30 Bans and the appropriateness of declaratory and injunctive relief can be resolved without the individual participation of each affected member. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199-200 (2023); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

70. The Organizational Plaintiffs accordingly have associational standing to assert the rights of their members who purchase firearms within the City of Los Angeles and the City of Inglewood. Their members would have standing to sue in their own right; the interests the Organizational Plaintiffs seeks to protect are

24

germane to the Organizational Plaintiffs' purposes; and neither the claims asserted nor the relief requested requires the individual members' participation. *Id.*

**V.    The Section 1021.11 Fee-Shifting Regime Violates the Constitution.**

71.    California Code of Civil Procedure Section 1021.11 imposes a one-way fee-shifting penalty on any person, attorney, or law firm that seeks declaratory or injunctive relief against a state or local firearms law. The statute allows government defendants to recover attorney's fees and costs if they prevail on any claim, even if plaintiffs prevail on others, while denying plaintiffs prevailing-party status altogether. It also authorizes a separate state-court collection action within three years and purports to permit enforcement even if a court has already held the statute invalid or preempted. In substance, Section 1021.11 is designed to deter firearms-related civil-rights litigation by threatening asymmetric and potentially ruinous fee liability.

72.    Section 1021.11 violates the First Amendment. The right to petition includes the right of access to the courts, and government may not burden that right by imposing punitive conditions on those who seek judicial review of allegedly unconstitutional laws. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *NAACP v. Button*, 371 U.S. 415, 429-30 (1963); *In re Primus*, 436 U.S. 412 (1978). Section 1021.11 targets only one class of litigants—those challenging firearms laws—and thus burdens protected petitioning activity based on

subject matter and viewpoint. It exists to insulate firearms regulations from judicial scrutiny and cannot survive constitutional review. *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1224-27 (S.D. Cal. 2022), correctly held the statute invalid on that ground.

73.    Section 1021.11 is also preempted by 42 U.S.C. § 1988. Federal law governs fee awards in § 1983 actions and permits prevailing plaintiffs ordinarily to recover fees, while prevailing defendants may recover only when the suit is frivolous, unreasonable, or groundless. *Hensley v. Eckerhart*, 461 U.S. 424, 429 & n.2 (1983); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). Section 1021.11 flips that regime by granting government defendants fees for partial success, denying fees to plaintiffs entirely, and authorizing later state-court fee actions notwithstanding the federal court's judgment. It therefore conflicts with both the text and purpose of § 1988 and is preempted under the Supremacy Clause. *Miller*, 646 F. Supp. 3d at 1227–30.

74.    Section 1021.11 also violates the Equal Protection and Due Process Clauses. It singles out firearms-rights plaintiffs and their counsel for uniquely adverse treatment imposed on no other class of civil-rights litigants. That classification burdens the exercise of First and Second Amendment protected rights, cannot survive strict scrutiny, and fails even rational-basis review. The statute likewise denies meaningful access to the courts by conditioning judicial review on willingness to risk crushing fee liability for partial loss. As *Miller* explained, laws

that exact an unaffordable price for access to court are intolerable. 646 F. Supp. 3d at 1225.

75.    Section 1021.11 irreparably harms Plaintiffs. This action falls within the statute's terms because Plaintiffs seek declaratory and injunctive relief under § 1983 against local firearms ordinances and the officials who enforce them. The statute therefore exposes Plaintiff Lopez, the Organizational Plaintiffs, and their counsel to joint and several liability for Defendants' fees if Defendants prevail on any claim. Defendants have not disclaimed reliance on the statute. That threat is concrete and present. It materially deters Lopez from participating in this litigation, chills the Organizational Plaintiffs' decision to bring and support firearms cases on behalf of its members, burdens counsel's willingness to represent such plaintiffs, and prevents Plaintiffs from litigating their constitutional claims on equal terms. Declaratory and injunctive relief against Defendants' invocation or enforcement of Section 1021.11 would remove that deterrent and redress Plaintiffs' injuries.

## VI. Causes of Action

### A. Count One

**COUNT ONE**
**1-in-30 Bans**
**42 U.S.C. § 1983**
**Action for Deprivation of Plaintiffs' Rights under the**
**Second and Fourteenth Amendments**
**Facial and As-Applied**
**(All Plaintiffs v. All Defendants)**

76. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

77. All Plaintiffs assert Count One against all Defendants.

78. Count One proceeds both facially and as-applied.

79. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Second Amendment is applicable against state and local governments via the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010); *id.* at 805–858 (Thomas, J., concurring in part and concurring in judgment) ("the right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause").

80. For the reasons set forth above, the 1-in-30 Bans violate the Second and Fourteenth Amendments to the United States Constitution. The Bans meaningfully

constrain conduct protected by the Second Amendment's plain text—the purchase of more than one handgun within a thirty-day period—and Defendants cannot demonstrate that the Bans are consistent with this Nation's historical tradition of firearm regulation. *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

81. For the reasons set forth above, the 1-in-30 Bans irreparably harm Plaintiff Lopez and the members of the Organizational Plaintiffs. Plaintiff Lopez desires and intends to purchase more than one handgun within a thirty-day period and is deterred from doing so solely by the threat of criminal prosecution under the Bans. The Organizational Plaintiffs' members, including the named Individual Plaintiff, are injured in the same manner. But for the Bans, Plaintiffs would exercise their constitutionally protected right to acquire multiple handguns within a thirty-day period for self-defense, defense of others, proficiency training, and other lawful purposes.

82. Defendants enacted, enforce, and threaten to enforce the 1-in-30 Bans under color of state law within the meaning of 42 U.S.C. § 1983. Their enforcement of the Bans deprives Plaintiffs of rights secured by the Second and Fourteenth Amendments.

**B.    Count Two**

**COUNT TWO**
**Section 1021.11**
**42 U.S.C. § 1983**
**Action for Deprivation of Plaintiffs' Rights under the**
**First and Fourteenth Amendments**
**Facial and As-Applied**
**(All Plaintiffs v. All Defendants)**

83.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

84.    All Plaintiffs assert Count Two against all Defendants.

85.    Count Two proceeds both facially and as-applied.

86.    The First Amendment provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the government for a redress of grievances." U.S. CONST. amend. I. The First Amendment is applicable against the States. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

87.    For the reasons set forth above, Section 1021.11's fee-shifting penalty violates the First Amendment to the Constitution. The statute chills Plaintiffs' right to petition the courts for redress of their Second Amendment grievances, is content-based and viewpoint-discriminatory, and cannot survive strict scrutiny.

88.    For the reasons set forth above, Section 1021.11 irreparably harms both Plaintiff Lopez and the Organizational Plaintiffs. The statute subjects Plaintiffs and

30

their counsel to joint and several liability for Defendants' attorney's fees for bringing this action. It deters Plaintiff Lopez from participating in this litigation and chills the Organizational Plaintiffs from filing this and other lawsuits they are otherwise prepared to bring on behalf of their members. But for Section 1021.11, Plaintiffs would press their constitutional challenges to the 1-in-30 Bans without the threat of asymmetric and potentially ruinous fee liability.

**C.    Count Three**

**COUNT THREE**
**Section 1021.11**
**42 U.S.C. § 1983**
**Action for Deprivation of Plaintiffs' Rights under the**
**Supremacy Clause**
**Facial and As-Applied**
**(All Plaintiffs v. All Defendants)**

89.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

90.    All Plaintiffs assert Count Three against all Defendants.

91.    Count Three proceeds both facially and as-applied.

92.    The Supremacy Clause provides in relevant part that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land . . . any thing in the constitution or laws of any State to the contrary notwithstanding." U.S. CONST. art. VI, § 2.

93. Section 1988(b) provides in relevant part that, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

94. For the reasons set forth above, Section 1021.11's fee-shifting penalty directly conflicts with 42 U.S.C. § 1988(b), undermines its purposes, and is preempted. Its application is unconstitutional under the Supremacy Clause.

95. For the reasons set forth above, Section 1021.11 irreparably harms both Plaintiff Lopez and the Organizational Plaintiffs. The statute creates an asymmetric fee regime that deters Plaintiffs from prosecuting their federal civil rights claims under Section 1983 and threatens to nullify the fee protections Congress provided through Section 1988. But for Section 1021.11, Plaintiffs would litigate their constitutional challenges to the 1-in-30 Bans without the risk that a state-law collection action could be brought against them and their counsel for exercising federal rights in federal court.

**D.     Count Four**

**COUNT FOUR**
**Section 1021.11**
**42 U.S.C. § 1983**
**Action for Deprivation of Plaintiffs' Rights under the**
**Equal Protection Clause**
**Facial and As-Applied**
**(All Plaintiffs v. All Defendants)**

96.   The foregoing paragraphs are hereby incorporated herein as if set forth in full.

97.   All Plaintiffs assert Count Four against all Defendants.

98.   Count Four proceeds both facially and as-applied.

99.   The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

100.   For the reasons set forth above, Section 1021.11 violates the Equal Protection Clause. The statute singles out firearms-rights plaintiffs for uniquely adverse fee-shifting treatment while imposing no comparable burden on any other category of civil rights litigant. This classification cannot survive any level of scrutiny.

101.   For the reasons set forth above, Section 1021.11 irreparably harms both Plaintiff Lopez and the Organizational Plaintiffs. The statute treats Plaintiffs differently from all other civil rights plaintiffs in California—including those who

challenge government action under every other provision of the Bill of Rights—solely because Plaintiffs seek to vindicate Second Amendment protected rights. But for this discriminatory treatment, Plaintiffs would litigate on equal footing with every other civil rights plaintiff in the State.

### E.   Count Five

**COUNT FIVE**
**Section 1021.11**
**42 U.S.C. § 1983**
**Action for Deprivation of Plaintiffs' Rights under the**
**Due Process Clause**
**Facial and As-Applied**
**(All Plaintiffs v. All Defendants)**

102. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

103. All Plaintiffs assert Count Five against all Defendants.

104. Count Five proceeds both facially and as-applied.

105. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

106. For the reasons set forth above, Section 1021.11 violates the Due Process Clause. The statute exacts a punitive financial penalty on citizens who exercise their fundamental right to seek judicial review of firearms regulations, thereby depriving them of meaningful access to the courts without due process of

34

law. Section 1021.11 conditions access to the judicial process on the willingness to bear a risk of asymmetric fee liability that no other category of civil rights litigant must bear—a burden that "requires that a citizen be able to be heard in court." *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1225 (S.D. Cal. 2022).

107. For the reasons set forth above, Section 1021.11 irreparably harms both Plaintiff Lopez and the Organizational Plaintiffs. The statute threatens Plaintiffs with financial ruin for exercising their right to be heard in court. It deprives Plaintiff Lopez of the ability to challenge the 1-in-30 Bans on equal terms. It deprives the Organizational Plaintiffs and their counsel of the ability to litigate on behalf of the Organizational Plaintiffs' members without the threat of joint and several fee liability that attaches to no other form of civil rights litigation. But for Section 1021.11, Plaintiffs would access the courts to vindicate their constitutional rights without the punitive conditions the statute imposes.

## VII. Prayer for Relief

108. Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

109. The Court should address and resolve Counts Two, Three, Four, and Five before addressing and resolving Count One.

110. As to Counts Two, Three, Four, and Five, the Court should enter judgment in Plaintiffs' favor and against the Defendants, as follows:

a. Declare that the SB 1327 fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 violates the First Amendment to the United States Constitution;

b. Declare that the SB 1327 fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 is preempted and its application is unconstitutional under the Supremacy Clause of the United States Constitution;

c. Declare that the SB 1327 fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

d. Declare that the SB 1327 fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

e. Enjoin the Defendants' enforcement or application of the SB 1327 fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 against Plaintiffs, Plaintiffs' members, and any attorney or law firm representing any Plaintiff in any litigation involving the Defendants potentially subject thereto;

f. Award Plaintiffs costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled; and

g. Grant any and all other equitable and/or legal remedies this Court may see fit.

111. As to Count One, the Court should enter judgment in Plaintiffs' favor and against all Defendants, as follows:

a. Declare that Plaintiffs' rights guaranteed by the Second and Fourteenth Amendments to the United States Constitution are violated by the enforcement of L.A. City's 1-in-30 Ban, Los Angeles Municipal Code § 55.14, enacted by Ordinance No. 172,430 (eff. Mar. 4, 1999, oper. June 3, 1999), et seq.;

b. Permanently enjoin the L.A. Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, and all persons who have notice of the injunction, from enforcing L.A. City's 1-in-30 Ban, Los Angeles Municipal Code § 55.14, enacted by Ordinance No. 172,430 (eff. Mar. 4, 1999, oper. June 3, 1999), et seq.;

c. Declare that Plaintiffs' rights guaranteed by the Second and Fourteenth Amendments to the United States Constitution are violated by the

enforcement of Inglewood's "1-in-30 Ban," Inglewood Municipal Code § 5-19.6 et seq.;

d. Permanently enjoin the Inglewood Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, and all persons who have notice of the injunction, from enforcing Inglewood's 1-in-30 Ban, Inglewood Municipal Code § 5-19.6 et seq.;

e. Award Plaintiffs nominal damages;

f. Award Plaintiffs' costs, attorney fees, and all other allowable expenses pursuant to 42 U.S.C. § 1988 and all applicable laws; and

g. Grant any and all other equitable and/or legal remedies this Court may see fit.

Respectfully submitted,

Dated: June 3, 2026

**LAWRENCE BARTELS LLP**

By: */s/ David T. Bartels*
    DAVID T. BARTELS
*Attorneys for Plaintiffs Thomas Lopez,*
*Firearms Policy Coalition, Inc, and*
*California Gun Rights Foundation*

**FLORES LAW PLLC**

By: */s/ Chad Flores*
    CHAD FLORES
*Attorneys for Plaintiffs Thomas Lopez,*
*Firearms Policy Coalition, Inc, and*
*California Gun Rights Foundation*